CITIZENS FEDERAL BANK, F.S.B., Appellee,

v.

BRICKLER et al., Appellants.

[Cite as *Citizens Fed. Bank, F.S.B. v. Brickler* (1996), 114 Ohio App.3d 401.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 15653.

Decided Sept. 27, 1996.

402

*Canice J. Fogarty* and *Michael R. Pentecost*, for appellee.

*John D. Squires* and *William K. James*, for appellants.

***

GRADY, Judge.

Defendants, Herbert J. Brickler, Jr. and Joan E. Brickler, appeal from a judgment which awarded plaintiff Citizens Federal Bank the amount due on a promissory note, ordered that the Bricklers' equity of redemption in real property used to secure that note be foreclosed, and ordered a sheriff's sale of that real property.

Citizens Federal Bank is the successor by merger to Home Savings & Loan Association. In 1973, the Bricklers refinanced their home with Home Savings and executed a promissory note in favor of Home Savings. The note required the Bricklers to make payments in successive monthly installments until the note was paid in full. The note also provided that all or part of the unpaid principal sum could be prepaid at any time. The note further provided that in the event of a default of any installment payment, Home Savings, at its option, could declare the entire balance of the note to be immediately due and payable.

The Bricklers also executed a mortgage in favor of Home Savings to secure the promissory note. The terms of the mortgage required the Bricklers to pay the indebtedness secured by the mortgage according to the terms of the promissory note. In addition, the mortgage similarly provided that if the Bricklers failed to perform any covenant or agreement of the mortgage or of the promissory note, Home Savings, at its option, could declare the entire amount of principal and interest secured by the mortgage to be immediately due and payable.

In February 1995, Citizens Federal filed its complaint for foreclosure against the Bricklers, alleging that the promissory note had not been paid according to its terms and that payments under the note were in default. Citizens Federal further alleged that, pursuant to its rights under the note, it had elected to declare the note's outstanding principal and interest immediately due and payable. Citizens Federal sought a judgment for the amount it was due under the note, a foreclosure of the mortgage which secured the note, a sale of the Bricklers' real estate encumbered by that mortgage, and an order applying the proceeds from that sale to the amount due on the note.

The Bricklers filed an answer and counterclaim in which they denied they were in default of the contract, and further asserted that "by agreement and course of dealing between them and Home Savings and Loan Association, the originator of the subject loan, they were entitled to defer regular monthly payments on the

subject loan without triggering a default by reason of their voluntary and substantial early payments of principal."

The Bricklers also asserted that in connection with the transaction, Home Savings had violated the Truth in Lending Act ("TILA"), Section 1601 *et seq.*, Title 15, U.S. Code, by failing (1) to accurately disclose the amount financed, (2) to expressly disclose the finance charge, and (3) to give them timely or accurate notice of their right to rescind the transaction. The Bricklers alleged that they had a right to rescind the transaction as a result of the TILA violations, that they had timely asserted their right of rescission, and that their rescission of the contract entitled them to recoup damages in an amount greater than the damages claimed in the complaint against them.

When they filed their answer and counterclaim, the Bricklers also moved for summary judgment. In that motion, the Bricklers sought a dismissal of Citizens Federal's complaint because of the alleged rescission of the contract upon which that complaint was based.

The trial court overruled the Bricklers' motion for summary judgment. The trial court found that the failure to state the total amount of the finance charge in the TILA disclosure statement was a material nondisclosure. However, the trial court concluded that the Bricklers' right to rescind the loan transaction was barred by Section 1635(f), Title 15, U.S. Code, which states:

"An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor. * * * "

Moreover, the trial court determined that this statute was a statute of prescription, and not a statute of limitation, and that as a result the Bricklers' alleged rescission rights could not be raised as a recoupment defense.

Citizens Federal subsequently filed its own motion for summary judgment. Citizens Federal.attached an affidavit from its assistant collections manager, who stated that the Bricklers were delinquent in payments due under the promissory note and set forth the amount of the delinquency. Citizens Federal argued that, because of the arrearage, it was entitled to declare the entire note due and owing.

In opposition to Citizens' motion for summary judgment, the Bricklers filed an affidavit of Herbert J. Brickler, which included the following statements:

"3. On or about May 31, 1973, we refinanced our home through Home Savings & Loan Association ('Home Savings') * * *.

"4. Subsequent to the closing we made all payments required under the loan, including the minimum payments required under the Note of $257.32 from June 1973 through and including September 1994, though occasionally some payments were not made in the time frame reflected in the Note.

"5. In addition to the regular minimum monthly payments of $257.32 we routinely included additional payments towards principal, which Home Savings would, by course of dealing, routinely deduct from principal on receipt and subsequently recharge against the loan balance during periods we experienced temporary cash flow problems delaying our otherwise regular payments under the loan. Home Savings did not object to our occasionally irregular loan payments so long as we maintained a sufficient prepaid principal cushion under the loan.

"6. For instance, from 16 May 1977 through 14 August 1978 we included extra principal payments of from $50.00 to $200.00 with our regular monthly payment of $257.32 to Home Savings, which prepayments totaled $1,750.00. Attached hereto as Exhibit A are true copies of pages from our loan payment book reflecting said payments.

"7. Subsequently, when I experienced cash flow problems in my business, Home Savings, pursuant to its policies as explained to me as well as our course of dealing over the life of the loan, would simply re-credit pre-paid principal as regular monthly payments on our loan. Each such regular 'payment' would be reflected by an increase in the principal balance shown in the right hand column of the payment book equal to the regular payment amount of $257.32, followed immediately by a re-application of the same amount to the principal and interest due for the month in question. A true copy of portions of our loan book reflected such 're-credited' principal prepayments for the months of June 1980–February 1981 is attached hereto as Exhibit B.

"8. I was personally assured on separate occasions by both the branch manager and assistant branch manager of the South Dixie office where I primarily banked that this was Home Savings' standard practice and would continue to be applicable to our loan so long as we remained contractually prepaid according to the original amortization schedule.

"9. In reliance upon the oral representations of Home Savings employees, we subsequently continued to routinely include in our payments to Home, or its successor, $50.00 more than the regular monthly payment.

"10. Citizens Federal Bank, F.S.B., as Home Savings' successor by merger, has refused to acknowledge our right established by long course of dealing with Home Savings to occasionally make irregular pre-payments under the loan.

"11. Pursuant to the policy of Home Savings in existence when we entered into the subject loan transaction in 1973 as well as our long-standing course of dealing over the life of the loan, we were not in contractual default in November 1994 when Citizens began to refuse to accept our tendered monthly payments."

The remainder of the affidavit set forth the Bricklers' unsuccessful attempts to tender payments to Citizens Federal, the total amount of payments the Bricklers had made under the loan, including additional principal payments of not less than $3,850, and the steps taken by the Bricklers to cancel the mortgage loan transaction.

The Bricklers argued that they were not in default of the loan agreement as that agreement had been modified by subsequent acts and agreements of the parties. In addition, the Bricklers urged the trial court to reconsider its denial of their motion for summary judgment, arguing that the statute of prescription/statute of limitations distinction relied upon by the trial court in that decision had been rejected by other Ohio courts.

The trial court sustained Citizens Federal's motion for summary judgment. Concerning the Bricklers' argument that the loan agreement had been modified, the court stated:

"The Court finds that the Defendants' and Home Savings may have had an implied modification of their agreement. Furthermore, the Court agrees with Defendants that '[s]ubsequent acts and agreements may modify the terms of a contract and, unless otherwise specified, neither consideration nor a writing is necessary.' *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 172 [583 N.E.2d 1056, 1061]. However, Plaintiff had no notice of the modification, and thus are not bound by the modification."

Finally, the court declined to reconsider its previous decision overruling the Bricklers' motion for summary judgment.

The trial court subsequently entered judgment on its decision sustaining Citizens Federal's motion for summary judgment. The trial court awarded a monetary judgment to Citizens Federal in the amount of $14,772.82 plus interest, ordered the equity of redemption of the Bricklers in their property foreclosed, and ordered the property to be sold by the Sheriff of Montgomery County. Finally, the judgment stated that it was a final appealable order and that there existed no just reason for delay.

The Bricklers filed a timely notice of appeal. Upon subsequent motion by the Bricklers, the trial court stayed further execution on the judgment pending appeal and canceled a scheduled sale of the property.

The Bricklers now present two assignments of error.

First Assignment of Error

"The trial court erred in ruling the Bricklers were in default under their mortgage loan agreement originally entered into with home savings and granting plaintiff/appellee citizens federal a judgment of foreclosure."

The Bricklers contend that the court erred in granting summary judgment to Citizens Federal because the contract upon which Citizens relied had been modified by a subsequent oral agreement or course of dealing between the Bricklers and Home Savings. According to the Bricklers, that modification allowed them to fail to make the monthly installment payments required by their note and mortgage so long as the balance owed on their overall loan obligation was not in arrears.

The Bricklers contend that they presented evidence sufficient to raise a question of fact as to whether the loan agreement had been modified and as to whether Citizens Federal had knowledge of the modification. Further, the Bricklers contend that Citizens Federal, as the successor by merger to Home Savings, was bound by the modified agreement, regardless of whether it had notice of the modification.

Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

We agree with the trial court's conclusion that "subsequent acts and agreements may modify the terms of a contract, and, unless otherwise specified, neither consideration nor a writing is necessary." *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 172, 583 N.E.2d 1056, 1061. "There is no doubt that it was perfectly competent for the defendant to assent to any modification or change in the terms of the contract, and that such assent, either express or implied, if acted on by the plaintiffs, would be binding upon the defendant." *Mehurin & Son v. Stone* (1881), 37 Ohio St. 49, 57–58. "[I]t appears to be equally well settled, that, *subsequent* to the execution of a written contract, it is competent for the parties, by a *new contract, although not in writing,* either

to abandon, waive, or annul, the prior contract, or vary, or qualify the terms of it, in any manner. * * * But where a written contract is thus either totally abandoned and annulled, or simply altered or modified in some of its terms, it is done, and *can only be done,* by a distinct and substantive contract between the parties, founded on some *valid consideration."* (Emphasis *sic.*) *Thurston v. Ludwig* (1856), 6 Ohio St. 1, 5.

■ The evidence presented by Herbert J. Brickler in his affidavit is sufficient to raise questions of fact as to whether the original loan agreement between the Bricklers and Home Savings was subsequently modified, and what the terms of that modification were. Brickler stated that he and his wife routinely made additional payments toward principal and described a procedure whereby Home Savings would treat prepaid principal as a regular monthly payment on those occasions when the Bricklers missed an installment payment. Brickler also stated that he was assured by Home Savings that this practice would continue to apply to their loan so long as the Bricklers remained ahead of the loan's original amortization schedule. Brickler further stated that in reliance on these representations, he and his wife continued to routinely pay to Home Savings, and its successor, Citizens Federal, an additional $50 per month toward principal. By September 1994, the time of the missed installment payments that have given rise to this action, the Bricklers had made additional principal payments of not less than $3,850. Construing this evidence in favor of the Bricklers, reasonable minds could conclude that the Bricklers and Home Savings had modified their original loan agreement to relieve the Bricklers of the requirement to make monthly installment payments so long as they maintained a sufficient balance of prepaid principal to cover the installments that were not paid.

■ Citizens Federal contends that the statements contained in Brickler's affidavit are inadmissible hearsay. Brickler's affidavit does refer to certain assurances from employees of Home Savings. However, because Citizens Federal is the successor by merger to Home Savings, those statements are admissions of a party opponent. Consequently, pursuant to Evid.R. 801(D)(2), they are not hearsay and may be considered for purposes of summary judgment. Moreover, Brickler's description of the practice of making additional principal payments and the treatment of those payments by Home Savings when later installment payments were not made when due is itself sufficient to create a question of fact as to whether the original loan agreement was modified.

Citizens Federal further argues that, even assuming Home Savings did agree to permit the Bricklers to skip payments, that was merely a discretionary act on the part of Home Savings that did not rise to the level of an obligation that now binds Citizens Federal as the successor to Home Savings. Citizens Federal argues that the policy of Home Savings not to enforce the provisions of the

promissory note did not change the terms of the loan agreement between the parties, and that Home Savings retained the right to foreclose upon a default by the Bricklers but voluntarily chose not to exercise that right. This argument is in essence simply an argument that the original loan agreement was not modified. A jury may well agree with Citizens Federal's interpretation of the evidence. Nevertheless, reasonable minds can reach more than one conclusion from the evidence presented, and as a result, summary judgment is inappropriate.

■ It having been determined that the Bricklers presented sufficient evidence to create a question of fact as to whether their loan agreement with Home Savings was subsequently modified, the question remains as to whether that modification is binding on Citizens Federal. The trial court concluded that any such modification is not binding on Citizens Federal as it had no notice of the modification. We disagree.

It is undisputed that Citizens Federal is the successor by merger to Home Savings. R.C. 1701.82 states:

"(A) When a merger or consolidation becomes effective, all of the following apply:

"(1) The separate existence of each constituent entity other than the surviving entity in a merger shall cease * * *;

" * * *

"(3) The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights, privileges, immunities, powers, franchises, and authority, of a public as well as of a private nature, of each constituent entity, and all obligations belonging to or due to each constituent entity, all of which are vested in the surviving or new entity without further act or deed * * *;

"(4) The surviving or new entity is liable for all the obligations of each constituent entity * * *."

Similarly, R.C. 1121.06, concerning the reorganization of banks, states as follows:

"(D) When a consolidation or a merger becomes effective, the existence of each of the constituent banks, except the resulting bank, shall cease as a separate entity but shall continue in the resulting bank, subject to section 1121.07 of the Revised Code. The resulting bank shall have, without further act or deed, all property, rights, powers, duties, and obligations of each party to the merger or consolidation and trusts and to the duties and liabilities connected therewith, and shall perform every such trust or relation in the same manner as if it had itself

originally assumed the trust or relation and the obligation and liabilities connected therewith within the limits of the charter of the resulting bank."

Citizens Federal, as the successor by merger to Home Savings, is the bank resulting from its merger with Home Savings. Home Savings' existence has continued in Citizens Federal. As such, Citizens Federal can have no greater rights than Home Savings had, nor can the Bricklers be deprived of their rights under their contract with Home Savings simply because the entity with which they contracted has undergone a change in corporate form. The contractual obligations that may be imposed upon Citizens Federal as a result of its merger with Home Savings are not determined by whether Citizens had "notice" of those obligations. Those obligations are determined by the terms of the contract that existed at the time of the merger. If the original contract between the Bricklers and Home Savings was modified prior to the merger, then the modified contract is what Citizens Federal obtained upon merger, regardless of its knowledge of the terms of that contract, and is the only contract upon which Citizens Federal may pursue its claim.

 Viewed from the perspective of an assignment, the assignee of a contract takes that contract with all rights of the assignor and subject to all defenses that the obligor may have had against the assignor. The assignee stands in the shoes of the assignor and has no greater rights against the obligor than the assignor had. See 6 Ohio Jurisprudence 3d (1978) 213, Assignments, Section 46. Citizens Federal, as the assignee of the loan agreement from Home Savings, had no right to declare the Bricklers in default if the loan agreement was modified in such a way that would have prevented Home Savings from asserting such a default.

Finally, in order to obtain summary judgment on the basis that it had no notice of the modified loan agreement, Citizens Federal had the burden to demonstrate the absence of any genuine issue of material fact concerning such notice. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The evidentiary materials filed by Citizens Federal in support of its motion for summary judgment do not meet that burden. Accordingly, even if there were a requirement that Citizens Federal receive notice of the modified loan agreement in order to be bound by it, Citizens Federal's failure to demonstrate the absence of any genuine issue of material fact concerning that notice precludes the granting of summary judgment to Citizens Federal on that basis.

The first assignment of error is sustained.

Second Assignment of Error

"The trial court erred as a matter of law in its decision and entry of September 26, 1995 overruling the Bricklers' motion for summary judgment by holding that

the Bricklers could not raise their right to rescind the subject mortgage loan as a recoupment defense to plaintiff's foreclosure action under the applicable provisions of the Truth in Lending Act and Ohio law."

Before Citizens Federal filed its motion for summary judgment, the Bricklers filed their own motion for summary judgment. In that motion, they sought a determination from the court that they could raise their alleged rescission rights as an affirmative defense in the nature of setoff or recoupment, that the amount of the setoff or recoupment exceeded the amount Citizens Federal sought to recover from the Bricklers, and that as a result, the Bricklers were entitled to an order releasing the mortgage and dismissing the complaint of Citizens Federal with prejudice. The trial court denied the Bricklers' motion for summary judgment.

■ Our decision to sustain the Bricklers' first assignment of error requires us to reverse the final judgment entered in favor of Citizens Federal. Until a final judgment is entered in the case, the trial court may modify its decision to deny the Bricklers' motion for summary judgment. *Maxey v. Lenigar* (1984), 14 Ohio App.3d 458, 14 OBR 578, 471 N.E.2d 1388. In view of that, the court's denial of the Bricklers' motion for summary judgment remains an interlocutory order.

A denial of a motion for summary judgment is not a final appealable order. *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23, 37 O.O.2d 358, 222 N.E.2d 312; *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 554 N.E.2d 1292. Consequently, we are without jurisdiction at this time to determine the Bricklers' second assignment of error.

Having sustained the Bricklers' first assignment of error, we reverse the judgment of the trial court, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

BROGAN, P.J., and FREDERICK N. YOUNG, J., concur.