OPINION
Defendants-appellants Edward L. Nusekabel and Carol A. Nusekabel have taken the instant appeal from the entry of summary judgment in favor of plaintiff-appellee Chatfield and Woods Sack Company, Inc. ("CW") on CW's complaint seeking damages for breach of a promissory note and foreclosure on the mortgage securing the note. The Nusekabels advance on appeal two assignments of error, in which they challenge the determination that Edward Nusekabel was in default on the note and the award of attorney fees to CW.
Upon our determination that the challenge presented in the first assignment of error to the finding of default is meritless, we affirm the judgment entered below to the extent that it awarded CW money damages for Edward Nusekabel's breach of the promissory note and granted CW foreclosure on the mortgage. We do not, however, reach the merits of the challenge presented in the second assignment of error to the award of attorney fees, because the judgment was not final to the extent that it awarded to CW, but failed to ascertain, certain costs that included reasonable attorney fees and to the extent that it failed to address CW's claim for attorney fees.
CW instituted the proceedings underlying this appeal in August of 1996. It sought in its complaint a money judgment in the amount due under the promissory note, based upon Edward Nusekabel's alleged default in payments on the note; foreclosure on the mortgage, on the ground that the default on the note constituted a breach of the mortgage; "legal fees"; and "reimburse[ment]" of the "expenditures [necessary] for the protection of [t]he [mortgaged p]remises," including "taxes, assessments, legal fees, costs and * * * insurance," that were payable by the Nusekabels under the terms of the note and the mortgage, but paid by CW "during the pendency of [its foreclosure] action."
The matter was referred to a magistrate, and in January of 1997, the magistrate granted CW's motion for summary judgment in its favor on the complaint. The common pleas court, in response to the Nusekabels' objections, overruled the magistrate's decision and returned the matter to the magistrate for "completion."
The magistrate then considered the matter upon the parties' stipulated facts and the depositions of Edward Nusekabel and CW's president, Allen Bicknaver. Upon its determination that Edward Nusekabel had defaulted in his payments under the promissory note and that his default constituted a breach of the mortgage, the magistrate granted "[j]udgment for [CW] along with costs."
On March 10, 1998, the common pleas court implicitly overruled the Nusekabels' objections to the magistrate's decision, when it entered summary judgment for CW. The court ordered foreclosure on the mortgage, with all that foreclosure entails, and awarded CW the amount due under the note, "plus any taxes, advances for insurance, reasonable legal fees, and any other costs for protection of [t]he [mortgaged p]remises pursuant to the [m]ortgage, and [the] costs herein expended." The court further found, in accordance with Civ.R. 54(B), that there was no just reason for delay, and this appeal ensued.
 I.
The terms of the judgment entry from which this appeal derives compel us to address, as a preliminary matter, our jurisdiction over the appeal. Section 3(B)(2), Article IV of the Ohio Constitution confers upon courts of appeals "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." R.C. 2505.03(A) limits the jurisdiction of courts of appeals to the review of a "final order, judgment or decree." R.C.2505.02(B)(1) defines a "final order," in relevant part, as "[a]n order that affects a substantial right in an action which in effect determines the action and prevents a judgment."
When, as here, an action involves multiple claims, Civ.R. 54(B) authorizes the trial court to "enter final judgment as to one or more but fewer than all of the claims * * * [, but] only upon an express determination that there is no just reason for delay."
Without such a determination, "any order or other form of decision, however designated, which adjudicates fewer than all the claims * * *, [does] not terminate the action as to any of the claims * * *, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims * * * ." Civ.R. 54(B).
CW purported to state in its complaint two "claims for relief." The first "claim" sought money damages for Edward Nusekabel's alleged default on the promissory note and foreclosure for the Nusekabels' breach of the mortgage. The second "claim" sought reimbursement of the costs of "protecti[ng]" the mortgaged premises in the event that the Nusekabels abandoned their obligations under the mortgage to cover such costs.
Although CW's prayer for money damages was premised on an alleged breach of the promissory note and its prayer for foreclosure was premised on an alleged default under the mortgage, CW did not separately plead claims for money damages and foreclosure. Nor did it expressly set forth the factual and legal predicates underlying its prayer for "legal fees."
However, the Ohio Rules of Civil Procedure were promulgated with the purpose to promote "the resolution of cases upon their merits, not upon pleading deficiencies." Peterson v. Teodosio (1973),34 Ohio St.2d 161, 175, 297 N.E.2d 113, 122. The rules are to be applied "to effect just results," Civ.R. 1(B), and pleadings are to be "construed as to do substantial justice." Civ.R. 8(F). Thus, under Civ.R.8(A), a "claim for relief" need only consist of "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." This concept of "notice" pleading, embodied in Civ.R. 8(A), serves "to simplify pleadings to a `short and plain statement of the claim' and to simplify statements of the relief demanded * * * to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." Fancher v. Fancher
(1982), 8 Ohio App.3d 79, 83, 455 N.E.2d 1344, 1348.
Applying these principles here, we hold that CW's complaint placed the Nusekabels on notice of four "claims for relief." The first claim asserted an entitlement to money damages in the amount due on the promissory note, based upon Edward Nusekabel's alleged default in payment on the note. The second claim asserted an entitlement to foreclosure on the mortgage (with all that foreclosure entails), on the ground that the default on the note constituted an event of default under the mortgage. The third claim asserted an entitlement under the note to "legal fees" (in the words of the complaint) or "reasonable attorneys' fees" (in the words of the note), incurred by CW in the course of enforcing its rights under the note. And the fourth claim stated an entitlement to reimbursement of the "protection" costs, including "legal fees," incurred by CW while the action was pending.
The March 1998 entry from which the Nusekabels have appealed determined the foreclosure claim in CW's favor, awarded CW money damages in the amount due on the note, and awarded CW "protection" costs, including "reasonable legal fees." The entry did not, however, as it could not until the mortgaged premises were sold, award a sum certain in "protection" costs. Nor did it address in any manner CW's claim for "legal fees."
In the absence of a computation of the "protection" costs and a determination of CW's entitlement to and the amount of "legal fees," the entry from which this appeal derives did not effectively "determine the action" or "prevent a judgment." Therefore, the entry is not a "final order" as to the claim for "protection" costs or the claim for "legal fees."[1] See R.C.2505.02. Accordingly, we do not reach the merits of the challenge presented in the second assignment of error to the award of attorney fees.
To the extent that that the entry fully disposed of the money-damages and foreclosure claims, it "affect[ed] * * * substantial right[s]" and "in effect determine[d] the action and prevent[ed] a judgment" favorable to the Nusekabels on those claims. The entry is, therefore, a "final order" as to the money-damages and foreclosure claims.
Moreover, the court below included in its judgment an express determination, in accordance with Civ.R. 54(B), that there was no just reason for delay. Although Civ.R. 54(B) certification cannot transform a nonfinal order into an appealable order, it can, in an appropriate case, render appealable a "final order" that adjudicates fewer than all the claims in a multi-claim action. See Wisintainer v. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352,354, 617 N.E.2d 1136, 1138. The record before us sustains the common pleas court's factual determination, implicit in its Civ.R. 54(B) certification, that an interlocutory appeal of the money-damages and foreclosure claims would serve "the interests of sound judicial administration." See Wisintainer,supra at 355, 617 N.E.2d at 1138-1139. We, therefore, conclude that the court properly certified the entry and hold that, as to the money-damages and foreclosure claims, the entry from which this appeal was taken does contain a final appealable order.
 II.
We turn, at last, to the challenge advanced by the Nusekabels in their first assignment of error, to the finding that Edward Nusekabel defaulted in his payments on the promissory note. This challenge is untenable.
A.
We note, at the outset, some confusion as to our standard of review. The common pleas court, in its order of reference entered after the court had overruled the magistrate's initial decision granting summary judgment for CW, returned the matter to the magistrate for "completion," not for "trial." Nevertheless, the magistrate, in his subsequent decision granting "[j]udgment" for CW, stated that the matter had come before him "for trial * * * [upon] the trial briefs, the stipulated facts and the depositions." In contrast, the judgment entry from which the Nusekabels have appealed bears the caption "FINAL APPEALABLE SUMMARY JUDGMENT ENTRY * * * ." The Nusekabels then, on appeal, have challenged the entry of "summary judgment" for CW. CW has countered in its brief with a footnote in which it asserts that it had "[i]nadvertently" included the word "SUMMARY" in the caption when it had prepared the entry for the common pleas court's signature and that judgment had, in fact, been entered "following a trial of the facts and issues." Yet, CW has prefaced its argument with the statement that "the facts in [the] case are not in dispute."
Our review of the record of the proceedings below confirms that this matter was determined upon the resolution of issues of law, not fact. Accordingly, Civ.R. 56 provides the standard governing our review of the entry of judgment below.
B.
Civ.R. 56 permits a trial court to grant a motion for summary judgment if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. SeeTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,364 N.E.2d 267; Civ.R. 56(C).
The record discloses that on December 29, 1983, Edward Nusekabel executed a promissory note payable to Imperial Oaks, Ltd. The Nusekabels applied the proceeds toward their purchase of twelve condominium units, and the note was secured by a mortgage on the units. The note required full payment of principal and interest on December 29, 1990, or upon the disposition of all twelve condominium units, whichever event occurred earlier.PRIVATE It required the payment of a prorated portion of the principal and interest upon the disposition of fewer than all of the units.
In September of 1987, Imperial Oaks, Ltd., assigned its interest in the note and the mortgage to CW. From the date of the note's execution in December of 1983 through the note's December 1990 due date, the Nusekabels disposed of none of the condominium units and made no payments on the note.
On June 3, 1991, an attorney representing CW notified Edward Nusekabel by mail that the note was due. The letter effectively outlined three alternatives:
 (1) The parties could "extend the terms of the note and mortgage indefinitely with the * * * conditions [that] interest [would] continue to accrue at 12% per annum; upon the sale of any unit, the principal and interest associated with that unit [would] be paid; and all accrued interest on other units [would] be brought current";
 (2) The parties could convert the note into a "personal recourse" note, with interest at ten percent per annum and repayment in equal monthly installments over a four-year period; or
 (3) Edward Nusekabel could "cancel" the note by repaying the principal and interest due.
The letter evoked no response from the Nusekabels, and the debt remained wholly unsatisfied until 1993, when the Nusekabels sold four of the twelve condominium units. Upon the consummation of each sale, the Nusekabels tendered to CW a prorated portion of the principal and interest then due on the note, but did not "br[ing] current" the accrued interest on the balance owed on the note.
In April of 1996, Edward Nusekabel requested, but then neglected to attend, a meeting with CW executives to discuss the debt. In August of 1996, CW filed the action underlying this appeal.[2]
Edward Nusekabel's failure to tender on December 29, 1990, full payment of the principal and interest due on the promissory note constituted a breach of the note and, in turn, constituted an event of default under the mortgage. The Nusekabels contend, however, that CW offered and they accepted a modification of the terms of the note, and that Edward Nusekabel is not in default on the note as modified.
The parties to a contract may modify the terms of the contract by subsequent agreement or conduct, provided that the agreement or conduct manifests the parties' mutual assent to the modification. See Citizens Fed. Bank, F.S.B. v. Brickler (1996),114 Ohio App.3d 401, 407, 683 N.E.2d 358, 362. CW offered to modify the note upon the terms outlined in its attorney's June 1991 letter. The Nusekabels met this offer with silence. Then, in 1993, the Nusekabels tendered payment of the prorated portion of the principal and interest attributable to each of the four condominium units sold, but did not include in any payment the accrued interest on the balance owed on the note. These payments were thus inconsistent with the terms of any of the payment alternatives offered by CW in the June 1991 letter. The evidence, therefore, does not support the Nusekabels' contention that the parties mutually assented to a modification of the terms of the note.
The Nusekabels further contend that CW "waive[d] * * * by estoppel and laches" its right to payment of the principal and interest due on the note in the absence of some disposition of the condominium units. The Nusekabels failed, however, to plead the affirmative defenses of estoppel and laches, either in their answer or by amendment. They were, therefore, precluded from asserting these defenses in the proceedings below and are, in turn, precluded from asserting them on appeal. See Civ.R. 8(C) and 15; Jim's Steak House, Inc. v. Cleveland (1998), 81 Ohio St.3d 18,20, 688 N.E.2d 506, 508.
Our review of the uncontroverted evidence presented below compels our conclusion that Edward Nusekabel defaulted on the promissory note. We, therefore, overrule the first assignment of error.
Upon our determination that no issues of fact remained and that judgment was appropriate for CW as a matter of law, we hold that the court below properly entered summary judgment for CW on its money-damages and foreclosure claims. Accordingly, we affirm the judgment entered below to the extent that it awarded CW money damages for Edward Nusekabel's breach of the promissory note and granted CW foreclosure on the mortgage.
Judgment affirmed in part.
 Painter, P.J., and Sundermann, J., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Opinion.
[1] The Ohio Supreme Court in State ex rel. White v. CuyahogaMetro. Hous. Auth. (1997), 79 Ohio St.3d 543, 684 N.E.2d 72, stated the general rule that an order determining liability but not damages is not a "final order" as defined under R.C. 2505.02. The court then went on to recognize, but hold inapplicable, an exception to the rule, applied by federal courts, when the computation of damages is mechanical and thus unlikely to produce a second appeal. This exception would not, however, operate here to preserve the entry's finality with respect to the "protection" costs claim, because a determination of the amount due CW in "protection" costs, including "reasonable legal fees," would perforce be based upon matters adduced at an evidentiary hearing, and the court's resolution of those matters might well prompt a second appeal.
[2] The Nusekabels also sold a condominium unit in November of 1996, while this action was pending, and deposited into an escrow account a prorated portion of the principal and interest then due on the note.