This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Gunther Reppl, appeals from a judgment of the Summit County Court of Common Pleas that granted summary judgment to appellee, Cincinnati Insurance Company ("Cincinnati"), on Reppl's claims for underinsured motorist ("UIM") coverage. We reverse and remand.
 {¶ 2} Reppl was involved in an automobile collision on September 4, 2000, and sustained injuries as a result. He filed this action against Betty Jones, the alleged tortfeasor, and Cincinnati, with whom Reppl's employer, Michael Day Enterprises ("Michael Day"), held two policies of insurance: (1) an automobile liability insurance policy that carried, by its explicit terms, UIM coverage with coverage limits of $300,000, and (2) a $10,000,000 commercial umbrella liability policy that did not explicitly include UIM coverage but, according to Reppl, such coverage must be imposed by operation of law because Michael Day had not validly rejected it. Reppl alleged that his injuries exceeded the limits of Jones's automobile liability insurance coverage and, consequently, that she was an underinsured motorist.
 {¶ 3} It is undisputed that, at the time of the accident, Reppl was not driving a vehicle owned by Michael Day, nor was he driving within the scope of his employment with the company. Reppl sought UIM coverage pursuant to the line of reasoning set forth by the Ohio Supreme Court in Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660.
 {¶ 4} Cincinnati moved for summary judgment, asserting that Reppl was not entitled to UIM coverage under either policy for a few alternative reasons. Regarding the business automobile policy, Cincinnati asserted two arguments:
 {¶ 5} (1) Cincinnati had amended the automobile policy prior to the accident to more clearly define who is an insured for UIM purposes and, consequently, the ambiguity found to exist in the policy at issue in Scott-Pontzer no longer existed in the relevant policy; and
 {¶ 6} (2) Even without the amendment, the automobile policy's UIM coverage included an "other owned auto" exclusion and, because Reppl was driving his own automobile at the time of the accident, he did not qualify for UIM coverage.
 {¶ 7} Cincinnati asserted three alternative reasons why Reppl had no UIM coverage under the commercial umbrella policy:
 {¶ 8} (1) Michael Day explicitly rejected UIM coverage under the commercial umbrella policy; and
 {¶ 9} (2) Even if UIM coverage must be imposed by operation of law, Reppl was not covered under the umbrella policy because he has no UIM coverage under the automobile policy; and
 {¶ 10} (3) Reppl does not qualify as an insured under the terms of the umbrella policy.
 {¶ 11} Reppl responded in opposition to each of Cincinnati's arguments. Regarding the business automobile policy, he asserted:
 {¶ 12} (1) Cincinnati's attempted unilateral amendment to the terms of the automobile policy was ineffective and did not change the terms of the original policy; and
 {¶ 13} (2) The "other owned auto" exclusion does not, by its explicit terms, apply to the vehicle that Reppl was driving because it was not owned by a named insured.
 {¶ 14} Reppl also asserted arguments in response to each of Cincinnati's arguments under the umbrella policy:
 {¶ 15} (1) Cincinnati did not validly offer UIM coverage under the umbrella policy and/or Michael Day did not validly reject it, so UIM coverage must be imposed by operation of law;
 {¶ 16} (2) Even if Cincinnati establishes that Reppl is not an insured under the UIM coverage of the automobile policy, Cincinnati's second argument fails because excess insurers have an independent duty to offer UIM coverage; and
 {¶ 17} (3) According to the Supreme Court's reasoning in Scott-Pontzer, the terms of the liability policy do not limit the scope of UIM coverage imposed by operation of law.
 {¶ 18} The trial court granted summary judgment to Cincinnati on both policies, citing as its sole reason for doing so Cincinnati's first argument, that it had amended the definition of "who is an insured" under the UIM coverage of the auto policy and that, as a result, there was no ambiguity and the reasoning of Scott-Pontzer did not apply.
 {¶ 19} Reppl appeals and raises two assignments of error.
 First Assignment of Error
"THE TRIAL COURT ERRED BY DETERMINING THAT NO UNDERINSURED MOTORIST COVERAGE WAS AVAILABLE TO PLAINTIFF/APPELLANT UNDER CINCINNATI INSURANCE COMPANY POLICY CPP 551-91-52 (THE "AUTO POLICY")."
 {¶ 20} Reppl's first assignment of error challenges the trial court's entry of summary judgment on his claims for coverage under the business automobile policy. Pursuant to Civ.R. 56(C), summary judgment is proper if:
 "(1) [N]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589.
 {¶ 21} Doubts must be resolved in favor of the nonmoving party. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 686. A party moving for summary judgment bears an initial burden of pointing to "some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280,293. (Emphasis sic.) When a moving party has met this initial burden, the nonmoving party "may not rest on the mere allegations of her pleading, but her response *** must set forth specific facts showing the existence of a genuine triable issue." State ex rel. Burnes v. Athens Cty. Clerk of Courts (1998), 83 Ohio St.3d 523, 524.
 {¶ 22} Through its motion for summary judgment, Cincinnati asserted that Reppl had no UIM coverage under this policy for two reasons: (1) Cincinnati had amended the policy's definition of "who is an insured" for UIM coverage, which included removing the "you" found to be ambiguous in Scott-Pontzer, and Reppl did not qualify as insured under the new definition; and (2) even if the reasoning of Scott-Pontzer applied to this policy, Reppl's injuries were explicitly excluded from coverage under the policy's "other owned auto" exclusion. The trial court granted summary judgment on the first ground. For the reasons that follow, we find that summary judgment was not proper under either of these grounds.
 Amendment of the Policy {¶ 23} Reppl's claim that he is entitled to coverage under either of the Cincinnati policies hinges on the applicability of the Supreme Court's decision in Scott-Pontzer, for it is undisputed that he was not driving a vehicle owned by his employer nor was he acting within the scope of his employment. In Scott-Pontzer, the Ohio Supreme Court found that Christopher Pontzer, a similarly situated employee (injured, in his case fatally, while driving outside the scope of employment in a vehicle not owned by his employer) qualified as an insured under the UIM coverage of his employer's commercial automobile policy due to the ambiguity of the policy's definition of an "insured" for purposes of UM/UIM coverage, which was as follows:
"B. Who Is An Insured
"1. You.
"2. If you are an individual, any family member.
 "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured." Scott-Pontzer, 85 Ohio St.3d at 663.
 {¶ 24} The coverage form stated that "`[t]hroughout this policy the words you and your refer to the Named Insured shown in the Declarations.'" Id. According to the declarations page, only the employer, a corporation, was the named insured. The Scott-Pontzer majority held that, because a corporation "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle[,]" the word "you" could reasonably be interpreted to include the corporation as well as its employees. Id. at 664. Consequently, the court found Pontzer to be an insured under the UM/UIM coverage of the policy. Id. at 665.
 {¶ 25} There is no dispute in this case that the Cincinnati business automobile policy that became effective on August 28, 1998 included a "who is an insured" provision that is identical to the above language that was at issue in Scott-Pontzer. Cincinnati asserted on summary judgment, however, that on the date of the accident, September 4, 2000, a different provision was in effect because, through an endorsement dated August 24, 2000, Cincinnati amended the policy's definition of "who is an insured" for purposes of UIM coverage. Cincinnati further asserted that the new definition no longer included the ambiguous "you" and that Reppl would not qualify as an insured under the new provision.
 {¶ 26} In opposition to summary judgment, Reppl attacked Cincinnati's attempted modification of the policy with arguments based on the formation of contracts generally. Reppl asserted that Cincinnati's evidence demonstrated only that it had attempted to amend the terms of the policy, not that a binding modification had occurred.
 {¶ 27} Reppl pointed to the Cincinnati auto policy, maintaining that the policy became effective on August 28, 1998 and was, by its explicit terms, a three-year policy. Consequently, Reppl asserted, Cincinnati could not amend the terms of the policy during those three years without the mutual assent of the insured, Michael Day.
 {¶ 28} Insurance policies are contracts and the relationship between the insurer and the insured is contractual in nature. Hillyer v. State Farm Mut. Auto Ins. (1999), 131 Ohio App.3d 172, 178. As with any contract, "when the language in an insurance policy is clear and unambiguous, we must enforce the contract as written and give the words their plain and ordinary meaning." Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 607, citing Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665.
 {¶ 29} According to the declarations page of the business automobile policy that became effective August 24, 1998, the policy period was from 08-24-98 to 08-24-2001. Consequently, as Reppl correctly asserted, any modification of that contract would have to be supported by mutual assent and consideration. See Citizens Fed. Bank, F.S.B. v.Brickler (1996), 114 Ohio App.3d 401, 407; Hanly v. Riverside Hosp.
(1991), 78 Ohio App.3d 73, 79. Reppl pointed to Cincinnati's evidence that it issued a new endorsement to Michael Day, asserting that, this evidence demonstrated only that Cincinnati made an offer to Michael Day to make a change to the terms of the policy, not that Michael Day accepted that offer or otherwise assented to it.
 {¶ 30} Cincinnati responded with two arguments, neither of which is persuasive to this court. Cincinnati asserted that, under the Ohio Supreme Court's decision in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, the policy was required to be only for a guaranteed term of two years and, therefore, ended on August 24, 2000. We need not address this argument, however, because Reppl's opposition to summary judgment was based on the policy period as explicitly set forth in the policy, not on R.C. 3937.31
or the Supreme Court's construction of it in Wolfe.
 {¶ 31} Cincinnati also asserted that it was authorized by the following policy language to amend the terms of the policy during the policy period: "This policy can be amended or waived only by endorsement issued by us and made part of the policy." That language, by its plain and ordinary meaning, sets forth the procedure for changing the policy; it does not authorize Cincinnati to make unilateral changes to the terms. The endorsement must be issued by the company, and, if it is to become part of the contract, it must be made part of the contract just like any other provision is made part of the contract; i.e., by agreement of the parties to the contract.
 {¶ 32} Because Cincinnati failed to demonstrate that Michael Day assented to the policy endorsement, or that it was authorized to change the terms of the policy without mutual assent, the trial court erred in granting summary judgment to Cincinnati based on an amendment to the policy's definition of who is an insured for UIM purposes.
 {¶ 33} Although summary judgment was not proper on this basis, we must affirm summary judgment if there were any grounds to support it. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. We must, therefore, examine the other grounds that Cincinnati raised in support of its motion for summary judgment.
 Other Owned Auto Exclusion {¶ 34} Cincinnati also contended that even if the amendment was not effective and Reppl qualified as an insured under the policy pursuant to Scott-Pontzer, UIM coverage for his injuries was specifically excluded by the following policy provision:
"This insurance does not apply to:
 "`Bodily injury' sustained by an `insured' while the `insured' is operating or occupying a motor vehicle owned by *** a named insured *** if the motor vehicle is not specifically identified in the policy under which the claim is made[.]" (Emphasis added.)
 {¶ 35} The facts are not disputed that Reppl was operating his own motor vehicle at the time of the accident and that his motor vehicle was not specifically identified under the policy. Consequently, according to Cincinnati, his injuries fall within this so-called "other owned auto" exclusion.
 {¶ 36} Cincinnati's argument was premised on the word "you," found to be ambiguous in Scott-Pontzer and construed to include employees of the named insured. Cincinnati asserted that this provision excludes coverage for anyone who qualifies as "you" and is operating his own vehicle at the time of the accident. It may be true that coverage for Reppl's injuries would be precluded by the terms of such a provision if it had excluded coverage for injuries sustained by an insured while driving a vehicle owned by "you," if that vehicle was not specifically covered under the policy. See DeUzhca v. Derham (Apr. 5, 2002), 2d Dist. No. 19106, appeal allowed (2002), 96 Ohio St.3d 1511.
 {¶ 37} Cincinnati's reliance on Scott-Pontzer's construction of "you" is inapplicable here. The "other owned auto" provision at issue here does not exclude coverage for vehicles owned by the "you." Instead, it excludes coverage for vehicles owned by the "named insured." Although Reppl may have qualified as "you" and, consequently, an "insured" under the policy, he was not a "named insured." The declarations page of the Cincinnati business automobile policy identifies the named insured solely as "Michael Day Enterprises" and the policy includes no other definition of "named insured." There is no ambiguity in the term as it is defined or as it is used in the "other owned auto" exclusion and there is no dispute that Reppl is not the named insured. Therefore, this exclusion, by its plain and unambiguous terms, does not apply to Reppl's injuries. See Gilesv. Simonds, 7th Dist. No. 02-CO-18, 2003-Ohio-1428 (holding that a similar exclusion did not preclude recovery by appellant, one of the corporation's employees. She qualified as "you" and as an "insured," but was not a "named insured" because she was not identified on the declarations page); Kasson v. Goodman, 6th Dist. No. L-01-1432, 2002-Ohio-3022 (holding exclusion does not apply to employee; despite ambiguity in the term "you," the term "named insured" applies only to those individuals set forth in the declarations page); Purvis v. Cincinnati Ins. Co., 2nd Dist. No. 2001-CA-104, 2002-Ohio-1803, reversed on other grounds, 2003-Ohio-1314 (although employee and his wife were each an "insured," neither was a "named insured" under the other owned auto exclusion).
 {¶ 38} According to Cincinnati, because the policy defines "you" as the named insured, then the reverse is necessarily true, that the term "named insured" means "you" and that "you" would include employees of the named insured. We are not persuaded by this argument. Cincinnati essentially asserts that, because the term "you" was found to be ambiguous in Scott-Pontzer, "named insured" necessarily is ambiguous as well because the definitions are linked. In addition to the fact that at least one other appellate district has rejected this argument, in part because any ambiguity must be construed against the insurer, see Purvis, supra, Cincinnati is attempting to create an ambiguity in the term "named insured" when none exists.
 {¶ 39} The Scott-Pontzer majority found the term "you" to be ambiguous because, as that term was used in the policy, it could not mean solely the named insured, a corporation, but it necessarily included the corporation's employees because a corporation "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."85 Ohio St.3d at 664. That certainly does not mean that, because "you" was then defined to include the "named insured" and its "employees" that those three terms were interchangeable throughout the policy.
 {¶ 40} Moreover, the "named insured" is set forth in the declarations page of this policy as Michael Day. There is no ambiguity as that term is used in this other owned auto provision that refers to vehicles owned by the named insured, a corporation. A corporation can own vehicles and nothing in Scott-Pontzer suggested that there was any ambiguity in the term "named insured" or that it should be construed any differently than the named insured identified in the declarations page.
 {¶ 41} Therefore, the trial court erred in granting summary judgment to Cincinnati on Reppl's claim for UIM coverage under the business automobile policy. The first assignment of error is sustained.
 Second Assignment of Error "THE TRIAL COURT ERRED BY DETERMINING THAT NO UNDERINSURED MOTORIST COVERAGE WAS AVAILABLE TO PLAINTIFF/APPELLANT UNDER CINCINNATI INSURANCE COMPANY POLICY CCC 444 69 68 (THE "UMBRELLA POLICY")."
 {¶ 42} Reppl next challenges the trial court granting summary judgment to Cincinnati on his claim for UIM coverage under the commercial umbrella policy. It is undisputed that the umbrella policy did not provide UIM coverage by its explicit terms. Reppl alleged that UIM coverage should be imposed by operation of law because Cincinnati could not prove that it offered and/or that Michael Day validly rejected UIM coverage under the umbrella policy.
 {¶ 43} Cincinnati moved for summary judgment, raising three alternative reasons why there was no UIM coverage under the umbrella policy or, even if there was such coverage, Reppl did not qualify for it. First, Cincinnati asserted that there was no UIM coverage under the umbrella policy because Michael Day was offered and explicitly rejected UIM coverage under the umbrella policy. Cincinnati pointed to a form signed by a representative of Michael Day that expressly rejected UIM coverage under the umbrella policy. According to Cincinnati, pursuant to this court's decision in Martinez v. Travelers Ins. Co. (Apr. 24, 2002), 9th Dist. No. 20796, relying on R.C. 3937.18(A) as it was amended in 1997, the signed rejection form created a presumption that Cincinnati had validly offered Michael Day UIM coverage and the form established that such coverage had been properly rejected.
 {¶ 44} In Kemper v. Michigan Millers Ins. Co., 98 Ohio St.3d 162,2002-Ohio-7101, however, the Ohio Supreme Court expressly rejected reasoning similar to this court's reasoning in Martinez. According to Kemper, despite the 1997 legislative amendment to R.C. 3937.18, to establish a valid offer of UIM coverage, an insurer still must meet the requirements to establish a valid offer of UM/UIM coverage as set forth in Linko v. Indemn. Ins. Co. (2000), 90 Ohio St.3d 445. Consequently, we cannot follow Martinez as its reasoning on this issue is no longer good law. According to Kemper, the requirements of Linko still apply to determine the validity of Cincinnati's offer of UIM coverage to Michael Day under the umbrella policy, even though the policy period commenced in August 1998, after the statutory presumption in H.B. No. 261 took effect.
 {¶ 45} Consequently, because Cincinnati presented no evidence of a valid offer of UIM coverage to Michael Day, it failed to establish that there is no genuine issue of material fact as to whether UIM coverage must be imposed by operation of law under the umbrella policy.
 {¶ 46} Cincinnati's second argument under the umbrella policy is premised on the unsuccessful arguments that it made for summary judgment on Reppl's claims under the automobile policy. Cincinnati asserted that, because Reppl had no UIM coverage under the underlying automobile policy, he had no coverage under the umbrella policy. As we indicated in the discussion of Reppl's first assignment of error, Cincinnati failed to establish that Reppl did not qualify as an insured under the UIM coverage of the automobile policy. Consequently, this argument necessarily fails and was not an appropriate basis for summary judgment on Reppl's claims under the umbrella policy.
 {¶ 47} Cincinnati's final argument under the umbrella policy was that the explicit language of the policy limits coverage to employees while acting in the scope of their employment. Cincinnati's argument is premised, in large part, on its argument under the underlying policy that Scott-Pontzer reasoning did not apply to the automobile policy. Because Cincinnati failed to demonstrate that the reasoning of Scott-Pontzer does not apply to the automobile policy, this argument likewise fails.
 {¶ 48} Because Cincinnati failed to demonstrate that it was entitled to summary judgment on Reppl's claims under the umbrella policy, the trial court erred in granting summary judgment on those claims. The second assignment of error is sustained.
SLABY, P.J. and CARR, J. CONCUR.