[Cite as *Cook v. ProBuild Holdings, Inc.*, 2014-Ohio-3518.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Tiff J. Cook et al., | : | |
| Plaintiffs-Appellants, | : | No. 13AP-430 |
| v. | : | (C.P.C. No. 12CVH-2943) |
| ProBuild Holdings, Inc. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

# D E C I S I O N

## Rendered on August 14, 2014

*Onda, LaBuhn, Rankin & Boggs Co., LPA*, and *Patrick H. Boggs*, for appellants Tiff and Lesa Cook.

*Mollica Gall Sloan & Sillery Co., LPA*, and *Andrew J. Mollica*, for appellee Pomar, L.P.

*Finney, Stagnaro, Saba & Patterson Co., L.P.A., Jeffrey M. Nye*, and *Paul T. Saba*, for appellee Builder Services Group Inc. dba Gale Insulation.

*Weston Hurd LLP, Kevin R. Bush, Steven G. Carlino*, and *Nathaniel W. Jackson*, for appellee Remedics, Inc. dba Remedics Restoration & Remedics Restoration Carolinas, LLC.

*Weston Hurd LLP*, and *W. Charles Curley*, for appellee Colonial Heating & Cooling Co., Inc.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1}   This is an appeal by plaintiffs-appellants, Tiff J. Cook and Lesa D. Cook, from entries of the Franklin County Court of Common Pleas granting motions for judgment on the pleadings filed by defendants-appellees, Builders Flooring, Inc. ("Builders Flooring"), Ratcliff-Midkiff Masonry, Inc. ("Ratcliff-Midkiff"), Pomar, L.P. ("Pomar"), and Gale Insulation, Inc. ("Gale Insulation"), and granting motions for summary judgment filed by defendants-appellees, Colonial Heating & Cooling ("Colonial Heating"), and Remedics, Inc., dba Remedics Restoration and Remedics Restoration Carolinas, LLC (collectively "Remedics").

{¶ 2}   On March 7, 2012, appellants filed a complaint, naming as defendants ProBuild Holdings, Inc. ("ProBuild"), aka Khempco Building Supply Limited Partnership ("Khempco Building"), Blaine Ruble, Colonial Heating, Ratcliff-Midkiff, Builders Flooring, Remedics, Builder Services Group, Inc. ("Builder Services"), aka Masco Contractor Services, Inc. ("Masco"), aka, Gale Insulation, and Interior Surfaces.[1]   The complaint alleged causes of action against the named defendants for breach of contract, breach of warranty, promissory estoppel, failure to perform in a workmanlike manner/negligence, negligence per se, and negligent hiring, retention and supervision.

{¶ 3}   Appellants' complaint sets forth the following factual allegations.   On December 1, 2004, appellants and DiYanni Brothers ("DiYanni"), a general contractor, entered into an agreement whereby DiYanni agreed to design, construct, and sell to appellants a "Designer Series Hanover A" single-family home on a lot located in Pickerington, Ohio, for the purchase price of $364,400.   (Complaint, ¶ 19.)   Appellees served as subcontractors and material suppliers on DiYanni's residential construction projects, and DiYanni entered into a number of contractor agreements with appellees to provide labor and materials for the construction of appellants' residence.   DiYanni and appellees broke ground on January 26, 2005; thereafter, "[a] number of serious problems arose during the Project as a result of occurrences, poor workmanship, negligence, and the use of substandard materials by Defendants."   (Complaint, ¶ 26.)

{¶ 4}   As the project neared completion, a third-party investor "refused to close on the transaction due to the ongoing construction occurrences, problems and deficiencies."

---

[1] Appellants subsequently filed a notice of dismissal of their claims against Interior Surfaces.

(Complaint, ¶ 27.)  As a result, appellants were "left to find a new lender and finance the purchase of the Premises themselves."  (Complaint, ¶ 28.)  On August 4, 2005, appellants and DiYanni entered into a new real estate purchase agreement for the construction, purchase, and sale of a home, which included a one-year limited warranty and a ten-year structural warranty.  Closing occurred on August 12, 2005, but "the construction defects and deficiencies were never resolved."  (Complaint, ¶ 31.)

{¶ 5}  After failing to resolve the construction issues, appellants filed a complaint against DiYanni on October 8, 2008, asserting claims for "failure to perform in a workmanlike manner/negligence, breach of contract, breach of express warranty, negligent misrepresentation, violation of Ohio's Consumer Sales Practices Act, and intentional misrepresentation/concealment."  (Complaint, ¶ 32.)  DiYanni, in turn, filed a third-party complaint for indemnity, contribution, set-off, and subrogation against some of the contractors, including Khempco Building, Ratcliff-Midkiff, Gale Insulation, Colonial Heating, Lloyd Shaffer Stucco & Stone ("Lloyd Shaffer"), and Zarley, Inc.

{¶ 6}  Appellants subsequently settled their claims against DiYanni.  As part of the settlement, DiYanni paid appellants the sum of $20,000 and assigned to appellants "all rights, claims, and causes of action it had, or may have in the future, against contractors and/or suppliers that were involved in the Project regarding the Premises, the Project, the Franklin County Litigation and/or the AAA Arbitration proceedings, including any and all rights, claims, and causes of action arising under the Contractor Agreements at issue in this litigation."  (Complaint, ¶ 37.)

{¶ 7}  On July 25, 2011, the parties filed a stipulated notice of settlement and dismissal, whereby appellants dismissed their claims against DiYanni with prejudice, and DiYanni dismissed its third-party claims against Zarley and Lloyd Shafer with prejudice. DiYanni further dismissed its third-party claims against Ratcliff-Midkiff, Khempco Building and Gale Insulation without prejudice.

{¶ 8}  On July 24, 2012, the parties filed a stipulation of substitution/amendment of party, stipulating that defendant ProBuild, aka Khempco Building, was improperly identified as a defendant and that a successor entity, Pomar, was the appropriate defendant.  On October 2, 2012, Remedics filed a motion for partial judgment on the pleadings, asserting in part that any potential recovery by appellants was limited to the

$20,000 right DiYanni assigned to appellants.  On October 4, 2012, Ratcliff-Midkiff filed a motion to join in Remedics' motion for partial judgment on the pleadings.  Appellants filed a memorandum contra the motion for partial judgment on the pleadings.

{¶ 9}   On October 16, 2012, Pomar filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), arguing that appellants' claims were released in the settlement with DiYanni and that the claims were time-barred.  On December 11, 2012, Remedics filed a motion for summary judgment.  On December 12, 2012, Gale Insulation and Masco filed a motion for judgment on the pleadings.  Also on that date, Masco and Colonial Heating filed motions for summary judgment.  Appellants filed responses opposing the motions for summary judgment and judgment on the pleadings.  On January 4, 2013, appellants and Masco filed a stipulated dismissal of all appellants' claims against Masco with prejudice.

{¶ 10}  On March 13, 2013, the trial court filed an entry granting the motions for summary judgment filed by Remedics and Colonial Heating, as well as the motions for judgment on the pleadings filed by Gale Insulation and Pomar.  In its decision, the court determined in part that the four-year statute of limitations under R.C. 2305.09(D) was applicable to appellants' claims, and that all of the claims (filed approximately six and one-half years after the cause of action accrued) fell outside the applicable statutes of limitations.  The trial court further determined that appellants' claims were "not saved by the savings statute or tolled by R.C. 1312.08."

{¶ 11} Following that entry, the trial court held a status conference with the remaining parties, who agreed that the court's March 13, 2013 order would be dispositive of all remaining claims held by appellants.  The court subsequently granted Ratcliff-Midkiff's leave to file motions for summary judgment and judgment on the pleadings, and also granted Builders Flooring's leave to file a motion for judgment on the pleadings.  On May 1, 2013, the trial court granted the motions for judgment on the pleadings filed by Builders Flooring and Ratcliff-Midkiff.

{¶ 12} On appeal, appellants set forth the following three assignments of error for this court's review:

> I. THE TRIAL COURT ERRED IN RULING THAT APPELLANTS' CLAIMS FOR BREACH OF CONTRACT AND FAILURE TO PERFORM IN A WORKMANLIKE MANNER

ARE SUBJECT TO A FOUR-YEAR STATUTE OF LIMITATIONS.

II. THE TRIAL COURT ERRED IN HOLDING THAT NONE OF THE CLAIMS WERE TOLLED BY OHIO REVISED CODE SECTION 1312.08.

III. THE TRIAL COURT ERRED IN HOLDING THAT NONE OF THE CLAIMS WERE SAVED BY THE SAVINGS STATUTE, OHIO REVISED CODE SECTION 2305.19.

{¶ 13} Colonial Heating presents the following two "cross-assignments of error" for this court's review:

1. Because DiYanni had no rights against Colonial which it could assign to Appellants, the trial court erred by not entering summary judgment in favor of Colonial Heating & Cooling on that basis.

2. Because DiYanni did not provide notice of its intent to settle with Appellants to Colonial, the trial court erred by not applying the notice requirement of *Globe Indemnity Co. v. Schmitt,* 142 Ohio St. 595 (1944) and by not entering summary judgment in favor of Colonial Heating & Cooling on that basis.

{¶ 14} At issue on appeal are rulings by the trial court granting motions for judgment on the pleadings and summary judgment in favor of appellees. Civ.R. 12(C) allows for judgment on the pleadings where the trial court, "construing the material allegations in the complaint in favor of the nonmoving party as true, finds beyond doubt that 'the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.' " *Common Cause/Ohio v. Ohio Elections Comm.,* 150 Ohio App.3d 31, 2002-Ohio-5965, ¶ 14 (10th Dist.), quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Summary judgment under Civ.R. 56(C) is appropriate when: "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party." *McGrath v. Bassett,* 196 Ohio App.3d 561, 2011-Ohio-5666, ¶ 28 (8th Dist.). This court reviews de novo a trial court's entry of judgment on the

pleadings, pursuant to Civ.R. 12(C), and a court's grant of summary judgment pursuant to Civ.R. 56(C). *Id.* at ¶ 27.

{¶ 15} Under the first assignment of error, appellants assert the trial court erred in ruling that their claims for breach of contract and failure to perform in a workmanlike manner are subject to Ohio's four-year statute of limitations for a tort action. Appellants argue that the court should have instead applied the 15-year statute of limitations for a claim based on breach of a written contract.

{¶ 16} R.C. 2305.09(D) provides a four-year statute of limitations "[f]or an injury to the rights of the plaintiff not arising on contract." Former R.C. 2305.06 established a 15-year limitations period for actions on a contract in writing.[2]

{¶ 17} Appellants asserted before the trial court that their claims for breach of contract and failure to perform in a workmanlike manner arose ex contractu, and, therefore, the 15-year statute of limitations applied. In support, appellants argued that a line of Ohio cases recognized a distinction between an action by a vendee against a vendor-builder of an already constructed residence and an action involving an agreement to construct a home in the future.

{¶ 18} The trial court rejected appellants' argument, holding that the four-year statute of limitations under R.C. 2305.09(D) was applicable to their claims for breach of contract and failure to perform in a workmanlike manner. Specifically, the court found "no logical policy to support differentiating," for purposes of the applicable statute of limitations, between an action for the purchase of a previously constructed home and an action for a contract to construct a home in the future, as "[i]n each case, the cause of action arises in tort."

{¶ 19} In general, "[t]he duty to perform in a workmanlike manner is imposed by common law upon builders and contractors." *Zanesville Glass Supply, Inc. v. Goff,* 5th Dist. No. CT2007-0026, 2008-Ohio-1243, ¶ 40, citing *Mitchem v. Johnson,* 7 Ohio St.2d 66 (1966). In *Velotta v. Leo Petronzio Landscaping, Inc.,* 69 Ohio St.2d 376 (1982), paragraph one of the syllabus, the Supreme Court of Ohio held: "An action by a vendee against the builder-vendor of a completed residence for damages proximately caused by

---

[2] The Ohio General Assembly amended R.C. 2305.06, effective September 28, 2012, and the amended version now states in part that an action on a contract or promise in writing "shall be brought within eight years after the cause of action accrued."

failure to construct in a workmanlike manner using ordinary care -- a duty imposed by law -- is an action in tort to which the four-year statute of limitations set forth in R.C. 2305.09(D) applies." The Supreme Court in *Velotta* further observed: "*The obligation to perform in a workmanlike manner* using ordinary care may arise from or out of a contract, i.e., from the purchase agreement, but the cause of action is not based on contract; rather, it is based on a *duty imposed by law.*" (Emphasis added.) *Id.* at 378. While *Velotta* involved the sale of an already completed residence, the Supreme Court stated in a footnote: "We express no opinion as to whether a different result would be reached were the contract herein one to build a residence in the future or one to complete a partially constructed residence." *Id.* at 379, fn. 2.

{¶ 20} In *Barton v. Ellis,* 34 Ohio App.3d 251, 253 (10th Dist.1986), this court had occasion to consider the holding in *Velotta*, noting that application of the duty to perform in a workmanlike manner "has resulted in a distinction between the sale of a completed residence on the one hand, and the contracting for future construction services on the other." In discussing this distinction, we held:

> Absent express or implied warranties as to the quality or fitness of work performed, the liability of a builder-vendor of a *completed* structure for failure to exercise reasonable care to perform in a workmanlike manner sounds in tort, and arises *ex delicto.* The essential allegation is that the builder-vendor's negligence proximately causes the vendee's damages. *Velotta* * * *. By contrast, in the provision of future services, liability arises *ex contractu* as an implied bargain, * * * provision, condition, or term of sale.

(Emphasis sic.) *Id.*

{¶ 21} In *Kishmarton v. William Bailey Constr., Inc.,* 93 Ohio St.3d 226 (2001), the issue before the Supreme Court was whether, when a vendee and vendor-builder enter into an agreement for the future construction of a residence, the vendee's cause of action against the builder for breach of the duty to construct the residence in a workmanlike manner arises in contract or tort. The Supreme Court specifically noted that its earlier decision in *Velotta* "did not address the nature of an action by a vendee against the builder-vendor for breach of a contract to build a residence in the future." *Id.* at 228. The Court thus sought to "close the loop" generated by *Velotta. Id.* In resolving this issue, the

Supreme Court held: "Where the vendee and builder-vendor enter into an agreement for the future construction of a residence, the vendee's claim for breach of an implied duty to construct the house in a workmanlike manner arises *ex contractu*." *Id.* at paragraph one of the syllabus.

{¶ 22} In recognizing this distinction, the Court in *Kishmarton* discussed the nature of the consideration supporting the particular agreements. Specifically, the Court noted that in situations such as *Velotta* (i.e., involving the sale of an already completed residence), "the consideration for the purchase price was the structure, a finished product." *Kishmarton* at 228. By contrast, where the parties enter into an agreement for work to be performed in the future, " 'the consideration is the services * * * [to] be performed by the contractor. * * * While the contractor is still required to perform the services in a workmanlike manner, the quality of the product will be governed by the language of the contract itself.' " *Id.*, quoting *Vistein v. Keeney*, 71 Ohio App.3d 92, 105 (11th Dist.1990). The Court further noted: "The contract governs the warranty of good workmanship; therefore, the warranty of good workmanship arises from the contract. It can hardly be otherwise." *Kishmarton* at 228-29.[3]

{¶ 23} In a recent decision, *Jones v. Centex Homes,* 132 Ohio St.3d 1, 2012-Ohio-1001, syllabus, the Supreme Court held that "[a] home builder's duty to construct a house in a workmanlike manner using ordinary care is a duty imposed by law, and a home buyer's right to enforce that duty cannot be waived." In its decision, the Court reiterated language in *Velotta* that, "although the obligation to construct in a workmanlike manner may arise from a contract, the cause of action is not based on contract but on a duty imposed by law." *Id.* at ¶ 9, citing *Velotta* at 378-79.

{¶ 24} Appellees cite to the above language in *Centex,* i.e., that the cause of action is based on a duty imposed by law, as supporting their contention that the four-year statute of limitations should apply to appellants' claims for breach of contract and failure to perform in a workmanlike manner. As previously noted, however, the *Velotta* Court's

---

[3] In *Kishmarton,* the court cited with approval various Ohio appellate decisions, including this court's decisions in *Barton* and *Lloyd v. William Fannin Builders, Inc.*, 40 Ohio App.2d 507 (10th Dist.1973). In *Lloyd,* this court held that where the parties had entered into a contract for the sale of a residence to be constructed by the builder-vendor, the obligation to construct in a workmanlike manner arises ex contractu, and therefore is not subject to a four-year statute of limitations but rather the 15-year statute of limitations for breach of contract.

recognition of a "duty imposed by law" was in the context of "[a]n action by a vendee against the builder-vendor of a completed residence." *Velotta* at paragraph one of the syllabus. Similarly, the facts of *Centex* involved an action by a homeowner for the sale of an already constructed home, and the Court did not have occasion to address a contract for future services; nor did the Court in *Centex* discuss or purport to overrule its earlier holding in *Kishmarton* (i.e., that the liability of a home builder under a contract for the future construction of a residence arises ex contractu, and that such claim is governed by the language of the parties' agreement). Upon consideration, we do not construe *Centex* as negating the distinction recognized in *Kishmarton,* as well as by other Ohio courts, between the nature of an action by a vendee against the builder-vendor of a completed residence and an action by a vendee against the builder-vendor for breach of a contract to build a residence in the future.[4]

{¶ 25} Under Ohio law, in order to ascertain the applicable statute of limitations, "it is necessary to determine the true nature or subject matter of the acts giving rise to the complaint." *Doe v. First United Methodist Church,* 68 Ohio St.3d 531, 536 (1994). While "[t]orts arise from the breach of certain duties of conduct that are imposed by law for the protection of all persons within range of the harm * * * [c]ontractual duties, on the other hand, arise from the specific agreement of the parties to the contract." *Kocisko v. Charles Shutrump & Sons Co.,* 21 Ohio St.3d 98, 99 (1986).

{¶ 26} Here, appellants' claims for breach of contract and failure to perform in a workmanlike manner arise out of the contractor agreements entered between the general contractor (DiYanni) and its subcontractors (appellees) for future construction services, and we conclude that the nature of the liability is ex contractu, governed by the statute of limitations for contracts. We therefore conclude that the trial court erred in applying the four-year statute of limitations to appellants' claims for breach of contract and failure to perform in a workmanlike manner. Accordingly, we reverse the trial court's grant of judgment on the pleadings and summary judgment in favor of appellees with respect to those claims, and remand for further proceedings.

---

[4] We note that in *Centex* the Supreme Court observed that it saw "no legal impediment" to the fact the purchase contracts in that case offered a detailed limited warranty; the narrow issue before the court, rather, was "only to determine whether a home buyer can waive his right to enforce the builder's legal duty to construct the house in a workmanlike manner using ordinary care." *Id.* at ¶ 11.

{¶ 27} Based upon the foregoing, we sustain appellants' first assignment of error.

{¶ 28} Under the second assignment of error, appellants contend the trial court erred in failing to find that R.C. 1312.08 tolled the limitations period with respect to some of their claims, including those subject to a four-year statute of limitations. By way of background, appellants argued before the trial court that they sent a letter to the contractor, DiYanni, dated July 31, 2008, regarding notice of alleged defects, and that such notice triggered the tolling provision under Ohio's "right to cure defect" law (R.C. Chapter 1312). The trial court rejected appellants' attempt to invoke the statute's tolling provision, concluding that appellees did not fall under the statutory definition of a "general contractor."

{¶ 29} R.C. Chapter 1312 sets forth certain procedures whereby an "owner" must provide a "residential contractor" with notice and an opportunity to repair construction defects prior to bringing a legal action.[5] In accordance with R.C. 1312.04, "an owner may not commence arbitration or litigation against a builder of a residential building until 60 days after providing the builder with notice of the alleged construction defects." *Quetot v. M&M Homes, Inc.,* 1st Dist. No. 12 CO 1, 2013-Ohio-752, ¶ 14. R.C. Chapter 1312 contains a tolling provision, which states in part: "All applicable statutes of limitation or repose are tolled from the time the owner sends a notice of defect to a contractor pursuant to section 1312.04 of the Revised Code until the owner has complied with this chapter." R.C. 1312.08(A). Upon receiving notice, the builder must provide a response, and "[i]f the builder fails to respond or disputes the claim, an owner is deemed to have complied with the statute and may commence suit." *Quetot* at ¶ 14.

{¶ 30} R.C. Chapter 1312 "applies only to an owner and a residential contractor who enter into a contract for the construction or the substantial rehabilitation of a residential building." R.C. 1312.02. Pursuant to R.C. 1312.01(E), a "[r]esidential contractor" is defined as "a person or entity who, for pay, enters into a contract with an owner for the construction or the substantial rehabilitation of a residential building and who has primary responsibility for the construction or substantial rehabilitation of a residential building."

---

[5] Pursuant to R.C. 1312.01(C), "[o]wner" means "an owner or a prospective owner of a residential building or a dwelling unit in a residential building who enters into a contract with a residential contractor for the construction or substantial rehabilitation of that residential building or unit."

{¶ 31} In the instant case, pursuant to the allegations in the complaint, DiYanni, as contractor, entered into a number of separate contractor agreements with various appellees who served as subcontractors on DiYanni's residential construction projects. As noted, R.C. Chapter 1312 is only applicable with respect to an owner and residential contractor who enter into a contract for construction of a residential building. R.C. 1312.02. Appellants, however, as "owner[s]," did not enter into contracts with any of the appellees.

{¶ 32} While acknowledging they have no contractual privity with appellees, appellants seek to avail themselves of the tolling provision based upon the assignment from DiYanni. Under Ohio law, however, an assignee "stands in the shoes of the assignor and can obtain no greater rights against another than the assignor had." *W. Broad Chiropractic v. Am. Family Ins.,* 10th Dist. No. 07AP-721, 2008-Ohio-2647, ¶ 15, citing *Citizens Fed. Bank, F.S.B. v. Brickler*, 114 Ohio App.3d 401 (2d Dist.1996). Here, while DiYanni assigned to appellants all the rights, claims, and causes of action it had against its subcontractors, DiYanni itself is not an "owner" under the statutory definition, i.e., it could not have asserted tolling rights against appellees under R.C. Chapter 1312. Accordingly, we find no error with the trial court's determination that the tolling provision of R.C. 1312.08 does not apply to appellants' claims.

{¶ 33} Appellants' second assignment of error is without merit and is overruled.

{¶ 34} Under the third assignment of error, appellants challenge the trial court's determination that Ohio's savings statute, R.C. 2305.19, is inapplicable. Appellants contend that the original 2008 action and the refiled 2012 case involve the same or similar claims, as well as the same parties, for purposes of invoking the savings statute.

{¶ 35} R.C. 2305.19(A) states in part:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

{¶ 36} In general, the savings statute "operates in favor of a plaintiff who commenced an action within the proper time limits; who failed other than upon the merits; and who refiles within one year." *Wasserman, Wasserman, Bryan & Landry v. Midwestern Indemn. Ins. Co.,* 6th Dist. No. L-87-078 (Feb. 5, 1988). Under Ohio law, "[t]he savings statute applies when the original suit and the new action are substantially the same." *Children's Hosp. v. Ohio Dept. of Welfare,* 69 Ohio St.2d 523, 525 (1982). However, the savings statute is not applicable when "the parties and relief sought in the new action are different from those in the original action." *Id.* at paragraph one of the syllabus.

{¶ 37} In the instant case, in rejecting appellants' contention that the savings statute was applicable, the trial court relied upon *Children's Hosp.* and *Natl. Fire Ins. Co. v. Joslyn Mfg. Co.,* 25 Ohio App.2d 13 (9th Dist.1971). In *Natl. Fire,* the court determined that, for purposes of the savings statute, the assignee of a claim was not the same party as the original plaintiff. Specifically, the court held that "the phrase, 'the plaintiff * * * may commence a new action * * *' does not mean an assignee of a portion of the claim, or one to whom the original plaintiff sold an interest in the action." *Id.* at 15.

{¶ 38} According to the allegations in the complaint, appellants' 2008 action named only DiYanni as a defendant, i.e., appellants brought no claims against appellees at that time. Further, while appellants seek to step into the shoes of DiYanni (based upon its third-party complaint in the 2008 case), we find no error with the trial court's reliance upon *Natl. Fire* in determining that appellants, as assignees of a claim, were not the same party to the original action for purposes of invoking the savings statute. We note that in *Children's Hosp.,* the Supreme Court cited with approval *Natl. Fire,* and this court has similarly followed the holding in that case. *See Snyder v. Lyons,* 10th Dist. No. 92AP-790 (Dec. 17, 1992) (relying upon *Natl. Fire* in finding that insurer-subrogee was not same party as the insured for purposes of the savings statute). Other appellate courts have also adopted the reasoning in *Natl. Fire. See, e.g., Wasserman* (appellant law firm, having obtained interest in action as assignee of the original plaintiff, was "not the plaintiff as contemplated by R.C. 2305.19"). Accordingly, the trial court did not err in holding that, pursuant to *Natl. Fire,* the savings statute did not operate to save appellants' claims.

{¶ 39} Appellants' third assignment of error is without merit and is overruled.

{¶ 40} Having addressed each of appellants' assignments of error, we note that Colonial Heating did not file a cross-appeal, but has presented two "cross-assignments of error" for review.  Under its "cross-assignments of error," Colonial Heating contends that: (1) DiYanni had no legal ability to assign its right to indemnity against Colonial Heating, and that (2) even assuming a valid assignment by DiYanni to appellants, DiYanni failed to provide Colonial Heating with notice of its intent to settle.  In a similar vein, other appellees raise alternative arguments in support of affirmance of the trial court's decision.  Specifically, Remedics contends that: (1) there was no enforceable agreement between it and DiYanni, (2) appellants released all of their claims against the subcontractors, (3) appellants' potential recovery is limited to $20,000, and (4) Remedics was never a proper party.  Finally, Gale Insulation argues that the real estate purchase agreement was merged into the deed, thereby precluding any claims for breach of contract, and that, in the alternative, appellants' aggregate damages are limited to $20,000.

{¶ 41} Based upon its determination that all of appellants' causes of action were filed outside the applicable statute of limitations, the trial court did not address the above arguments raised by the various appellees.  Because the trial court did not consider these arguments, we decline to address them at this time "in the first instance."  *Benjamin v. Ernst & Young, L.L.P.,* 10th Dist. No. 06AP-1244, 2007-Ohio-4176, ¶ 18.  *See also Stratford Chase Apts. v. Columbus,* 137 Ohio App.3d 29, 33 (10th Dist.2000), quoting *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 360 (1992) ("Even though a reviewing court considers a summary judgment motion *de novo,* Civ.R. 56(C) 'mandates that the trial court make the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an "independent" review of an appellate court.' "); *Schmucker v. Kurzenberger,* 9th Dist. No. 10CA0045, 2011-Ohio-3741, ¶ 14 ("Because the trial court did not consider the alternative grounds for summary judgment as asserted by [defendant] we decline to do so in the first instance.").  Rather, upon remand, the trial court can address appellees' alternative arguments, as necessary.

{¶ 42} Based upon the foregoing, we sustain appellants' first assignment of error, appellants' second and third assignments of error are overruled, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this

matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded.*

**KLATT and CONNOR, JJ., concur.**

_____