[Cite as *RBT Strategies v. Hungington Bancshares*, 2025-Ohio-145.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| RBT STRATEGIES, LLC, et al., | CASE NO. 2024-L-038 |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| HUNTINGTON BANCSHARES<br>INCORPORATED d.b.a. THE<br>HUNTINGTON NATIONAL BANK, et al., | Trial Court No. 2023 CV 001706 |
| Defendant-Appellee. | |

# O P I N I O N

Decided: January 21, 2025
Judgment: Affirmed

*Evan T. Byron*, Kaufman, Drozdowski & Grendell, LLC, 29525 Chagrin Boulevard, Suite 250, Pepper Pike, OH 44122 (For Plaintiffs-Appellants).

*Christopher J. Niekamp*, *Erin L. Dickinson*, *David Robinson*, and *Jacob A. Kelly*, Buckingham, Doolittle & Burroughs, LLC, 3800 Embassy Parkway, Suite 300, Akron, OH 44333 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} This case arises from a bankruptcy adversary proceeding in which appellants purchased claims from the bankruptcy trustee in exchange for $150,000. Appellants, RBT Strategies, LLC, Equitable Strategies, LLC, and Thomas Muniak (collectively, "RBT Strategies"), then filed the same federal- and state-law based claims in the trial court below. RBT Strategies appeals the judgment entry of the Lake County Court of Common Pleas that granted a motion to dismiss filed by appellee, Huntington Bancshares Incorporated d/b/a The Huntington National Bank ("Huntington").

{¶2} RBT Strategies raises one assignment of error on appeal, contending the trial court erroneously granted Huntington's motion to dismiss because the statute of limitations has not run on its state law claim and because the trial court has subject matter jurisdiction over its assigned claims from the bankruptcy estate.

{¶3} After a careful review of the record and pertinent law, we find RBT Strategies' assignment of error to be without merit. The applicable statute of limitations on its state-law fraudulent-transfer claims was four years, which allegedly occurred in April 2019. The assigned claims were dismissed from the adversary proceeding in December 2022, giving RBT Strategies four months to file its state law claims in state court. However, it did not do so and waited until December 2023 to file its complaint in the instant case. Further, we agree with the trial court that the portion of RBT Strategies' assigned claims asserted on behalf of the bankruptcy estate and under federal bankruptcy law should be asserted in the federal bankruptcy case. It belies common sense that a trustee's statutory powers to bring state law claims in a federal bankruptcy case would be pleaded in a complaint filed in state court.

{¶4} The judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural History**

{¶5} In December 2023, RBT Strategies filed a complaint in the Lake County Court of Common Pleas, as assignees of the U.S. Chapter 7 bankruptcy trustee in *In re: Prestige Worldwide Furniture, LLC*, N.D. Ohio Bankr. No. 19-15022-aih, of claims in the trustee's adversary case, *Robert D. Barr, Trustee in Bankruptcy v. Equitable Strategies, LLC*, N.D. Ohio Bankr.Adv. Proc. No. 21-01045-aih ("*Barr v. Equitable Strategies*"). RBT

2

Strategies brought its complaint against Huntington and National Strategic Corporation LLC.[1]

{¶6} RBT Strategies alleged that in August 2019, Prestige Worldwide Furniture, LLC ("PWF") filed for Chapter 11 bankruptcy in the Northern District of Ohio Bankruptcy Court. In December 2019, the case was converted to a Chapter 7 bankruptcy. In August 2021, the trustee filed the adversary proceeding, *Barr v. Equitable Strategies*, against RBT Strategies, Equitable Strategies, and Mr. Muniak (the appellants in this case/collectively "RBT Strategies"); Huntington and National Strategic Corporation LLC ("the Other Defendants"); and three other entities, RS Consultants LLC, Volley Source LLC, and BMT Endeavors LLC.

{¶7} In September 2022, the bankruptcy court accepted a settlement agreement between the trustee and RBT Strategies in which RBT Strategies agreed to pay $150,000 in exchange for an assignment of the trustee's claims against Huntington and National Strategic Corporation LLC. Specifically, the trustee assigned "all of the Trustee's rights, interest, claims, etc. against the Other Defendants under 11 U.S.C. 544, 548, 550, and 551, and other applicable bankruptcy law and state law (i.e., R.C. 1313.56 and 1336.01 *et. seq.*, including, without limitation, the [Other Defendant] Claims." After receiving the settlement payment, the trustee filed a notice of voluntary dismissal of his claims against RBT Strategies, Huntington, and National Strategic Corporation LLC in December 2022.

{¶8} RBT Strategies further alleged that its assigned claims arose from a $900,000 loan PWF obtained from Northwest Bank shortly before it filed for bankruptcy

---

1. RBT Strategies' claims against National Strategic Corporation LLC are currently pending in the trial court.

Case No. 2024-L-038

in April 2019. In its count against Huntington, RBT Strategies alleged that in anticipation of filing for bankruptcy, PWF fraudulently transferred or caused to be transferred $436,650.77 to Huntington via three checks: (1) check no. 1025, in the amount of $250,000, on April 2, 2019; (2) check no. 1027, in the amount of $46,650.77, on April 3, 2019; and (3) check no. 1028, in the amount of $140,000, on April 18, 2019. RBT Strategies alleged that PWF received nothing in exchange for the transfers, the transfers were made to defraud creditors, the transfers were made to prefer Huntington over PWF's other creditors, and the transfers were fraudulent.

{¶9} RBT Strategies prayed for the transfers to either be avoided and preserved as fraudulent transfers pursuant to 11 U.S.C. 544, 548, 550, and 551 or for a monetary judgment against HNB for the sum of $436,650.77.

{¶10} Attached to RBT Strategies' complaint were filings from the adversary proceedings, including the trustee's complaint, the trustee's motion for authority to compromise certain fraudulent claims with the proposed settlement agreement between RBT Strategies and the trustee, a court notice on the trustee's motion, the court's order authorizing the compromise of certain fraudulent claims and the settlement agreement, and the trustee's notice of voluntary dismissal of the claims against RBT Strategies, Huntington, and National Strategic Corporation LLC.

**Huntington's Motion to Dismiss**

{¶11} Huntington filed a Civ.R. 12(B)(1) and (6) motion to dismiss, contending RBT Strategies' assigned claims should dismissed for lack of subject matter jurisdiction since the bankruptcy court has exclusive jurisdiction, and the statute of limitations has

4

Case No. 2024-L-038

passed for its individual state law claims. In addition, RBT Strategies failed to sufficiently plead a necessary element of its R.C. 1313.56 claim.

{¶12} Huntington clarified that Mr. Muniak, named by the trustee in the adversary proceeding, was the owner, operator, and member of RBT Strategies, Equitable Strategies, LLC, and PWF. Thus, RBT Strategies had actual knowledge of the fraudulent transfers when they occurred.

{¶13} After being granted two extensions to file a response, RBT Strategies filed a "Response to Defendants Huntington National Bank's Motion to Dismiss/Motion for Leave to Amend Complaint," requesting the court for leave to file an amended complaint to address the deficiencies in its complaint.

{¶14} The trial court denied the motion, declining to give RBT Strategies a third opportunity to respond to Huntington's motion to dismiss. The court noted that RBT Strategies filed its second motion for an extension past the deadline, which the court had granted, specifically stating in that judgment entry that "[n]o further extensions will be granted." RBT Strategies then untimely filed a response to Huntington's motion to dismiss instanter, which the trial court appears to have considered.

### The Trial Court's Judgment

{¶15} The trial court granted Huntington's motion to dismiss and dismissed RBT Strategies' claim against Huntington with prejudice.

{¶16} Firstly, the trial court found RBT Strategies' assigned claims should be dismissed with prejudice for lack of subject matter jurisdiction. The trial court found that RBT Strategies' assigned claims are "cases under Title 11" as stated in 28 U.S.C. 1334(a), and, thus, the bankruptcy court has exclusive jurisdiction. More specifically, the

5

Case No. 2024-L-038

assigned claims are "core proceedings" within the meaning of 28 U.S.C. 157(b)(2)(A), (B), (F), (H), and (O). The court further found RBT Strategies' argument that the trial court had subject matter jurisdiction because the assigned claims are no longer part of the estate lacked merit, noting RBT Strategies made the same claims as the trustee in the adversary proceeding and the settlement agreement specifically stated the assigned claims are property of the estate as defined in 11 U.S.C. 541.

{¶17} Secondly, the trial court found RBT Strategies' individual state law claims pursuant to R.C. 1336.01 et. seq. and R.C. 1313.56 are barred by the statute of limitations, which is four years pursuant to R.C. 1336.09. In cases where a claimant could not reasonably discover the transfer, the limitation period is one year after the transfer could have been reasonably discovered, even if it is later than four years. R.C. 1336.09(A). The court reviewed that RBT Strategies alleged PWF made the transfers on April 2, April 3, and April 18, 2019. Since the trustee alleged in the adversary case that Mr. Muniak, the owner and managing member of PWF, had control of the funds that were transferred to Huntington and that he signed the three checks, RBT Strategies was aware of the fraudulent transfers when they occurred. Applying the statute of limitations, the court concluded RBT Strategies should have filed its complaint by April 18, 2023, pointing out RBT Strategies' claims were not time-barred when the adversary case was settled on December 9, 2022, and RBT Strategies had four months to file its claims before the statute of limitations expired. Furthermore, RBT Strategies could not avail itself of Ohio's savings statute, R.C. 2305.19, because it was not the plaintiff in the adversary proceeding. Thus, the court found RBT Strategies' individual claims under R.C. 1336.01 et. sq. and R.C. 1313.56 were time barred and dismissed them with prejudice.

6

Case No. 2024-L-038

**{¶18}** Thirdly, the trial court found that RBT Strategies' claim pursuant to R.C. 1313.56 for an appointment of a receiver failed to allege a necessary element, i.e., that Huntington knew the PWF transfers were fraudulent, and dismissed the claim with prejudice.

**{¶19}** RBT Strategies raises one assignment of error for our review:

**{¶20}** "The trial court committed reversible error by granting Defendant-Appellee's motion to dismiss."

## Motion to Dismiss

**{¶21}** In RBT Strategies' sole assignment of error, it contends the trial court erred by granting Huntington's motion to dismiss. More specifically, RBT Strategies contends the trial court erred because (1) its state law claims pursuant to R.C. 1336.01 et. seq. are not time-barred and (2) the assigned trustee claims are not subject to the exclusive subject matter jurisdiction of the bankruptcy court.[2]

**{¶22}** An appellate court's standard of review for a trial court's actions regarding a motion to dismiss is de novo. *Lanza v. Lanza*, 2020-Ohio-6805, ¶ 17 (11th Dist.). A motion to dismiss pursuant to Civ.R. 12(B)(6) is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). When ruling on a Civ.R. 12(B)(6) motion, a court may not rely upon evidence or allegations outside the complaint. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997).

---

2. RBT Strategies does not raise as error the trial court's finding that its claim pursuant to R.C. 1313.56 was insufficiently pleaded.

7

Case No. 2024-L-038

{¶23} Further, a court may generally take judicial notice of at least some matters outside of the pleadings in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment, such as copies of other courts' decisions and judgment entries related to a case before it. *State ex rel. Kolkowski v. Bd. of Commrs. of Lake Cty.*, 2009-Ohio-2532, ¶ 31 (11th Dist.); *see also State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798, ¶ 10 (finding it appropriate to take judicial notice of a dismissal entry in a separate case to decide whether dismissal in a prohibition claim was warranted); *State ex rel. Scott v. Cleveland*, 2006-Ohio-6573, ¶ 26 (courts can take judicial notice of appropriate matters in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment); *Pirock v. Crain*, 2020-Ohio-869, ¶ 104 (11th Dist.).

{¶24} In its complaint, RBT Strategies claimed that PWF made fraudulent transfers pursuant to R.C. 1336.01 et. seq.

{¶25} Pursuant to R.C. 1336.09, the Ohio Uniform Fraudulent Transfer Act imposes restrictions on claims for relief under R.C. 1336.05 and states in pertinent part that:

{¶26} "A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:

{¶27} "(A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant;

8

{¶28} "(B) If the transfer or obligation is fraudulent under division (A)(2) of section 1336.04 or division (A) of section 1336.05 of the Revised Code, within four years after the transfer was made or the obligation was incurred;

{¶29} "(C) If the transfer or obligation is fraudulent under division (B) of section 1336.05 of the Revised Code, within one year after the transfer was made or the obligation was incurred."

{¶30} Neither party disputes that the statute of limitations is four years.

{¶31} We agree with the trial court that RBT Strategies rested on its laurels until the statute of limitations ran in April 2023, inexplicably waiting to file its complaint in December 2023. A review of RBT Strategies' complaint reveals that the latest date a fraudulent transfer occurred was April 18, 2019. It is also obvious that RBT Strategies had actual knowledge of the fraudulent transfer. Per the settlement agreement and upon satisfaction of RBT Strategies' $150,000 payment, these claims were dismissed in the bankruptcy adversary proceeding in December 2022, giving RBT Strategies four months to file its state law claims before they expired.

{¶32} Further, as the trial court noted, the "assignee" does not step into the shoes of the plaintiff for purposes of Ohio's savings statute, R.C. 2305.19, which provides:

{¶33} "In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period

9

of the original applicable statute of limitations, whichever occurs later . . . ."  R.C. 2305.19(A).

{¶34}  "[T]he savings statute 'operates in favor of a plaintiff who commenced an action within the proper time limits; who failed other than upon the merits; and who refiles within one year.'"  *Cook v. ProBuild Holdings, Inc.*, 2014-Ohio-3518, ¶ 36 (10th Dist.), quoting *Wasserman, Wasserman, Bryan & Landry v. Midwestern Indemn. Ins. Co.*, 1988 WL 11006, *2 (6th Dist. Feb. 5, 1988).  "'The savings statute applies when the original suit and the new action are substantially the same.'"  *Id.*, quoting *Children's Hosp. v. Ohio Dept. of Welfare*, 69 Ohio St.2d 523, 525 (1982).  The savings statute is not applicable, however, when "'the parties and relief sought in the new action are different from those in the original action.'"  *Id.*, quoting *Children's Hosp.*, at paragraph one of the syllabus.

{¶35}  As the Ninth District noted in *Natl. Fire Ins. Co. v. Joslyn Mfg. Co.*, 25 Ohio App.2d 13 (9th Dist. 1971), the savings statue is "'broad and unambiguous,'" and "the phrase, 'the plaintiff . . . may commence a new action . . . ' does not mean an assignee of a portion of the claim, or one to whom the original plaintiff sold an interest in the action."  *Id.* at 15, quoting *Greulich v. Monnin*, 142 Ohio St. 113, 116 (1943).

{¶36}  Accordingly, RBT Strategies' claim of fraudulent conveyance pursuant to R.C. 1336.01 et. seq. is barred by the statute of limitations.

{¶37}  We similarly review an appeal of a dismissal for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) de novo.  *Lanza*, 2020-Ohio-6805, at ¶ 22 (11th Dist.).

{¶38}  The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint.  *Crawford v. Kirtland Local School Dist. Bd. of Edn.*, 2018-Ohio-4569, ¶ 25 (11th Dist.).

10

**{¶39}** By way of introduction, "[a]dversary proceedings . . . are subactions which are raised within a 'case' and are commenced by the filing of a complaint." *Richman v. FWB Bank*, 122 Md.App. 110, 154 (Md.App. 1998), *aff'd*, 354 Md. 472 (1999), quoting *In re Blevins Electric, Inc.*, 185 B.R. 250, 253-54 (Bankr.E.D. Tenn. 1995), quoting 2 *Collier on Bankruptcy* 201.03 (15th ed. 1994). "'Adversary proceedings in bankruptcy are not distinct pieces of litigation; *they are components of a single bankruptcy case* [.]' [*Cohen v. Bucci*, 905 F.2d 1111,] 1112 (emphasis [sic]). *See also In re Shearer*, 167 B.R. 153, 156 n. 1 (Bankr.W.D.Mo.1994) (stating that 'a "case" in Bankruptcy is commenced by the debtor's filing of a bankruptcy petition, and any subsequent litigation . . . is simply a part of the case as a whole'); *Berge v. Sweet*, 37 B.R. 705, 706 (Bankr.W.D.Wis.1983) ('A bankruptcy "case" commences with the filing of a petition . . . and may include a number of adversary proceedings . . . and "contested matters"'). *But cf.* Daniel R. Cowans, *Bankruptcy Law and Practice* § 3.19(a), at 308 (6th ed. 1994) ('Adversary proceedings are contemplated to be a separate piece of litigation under the overall bankruptcy case, *i.e.,* in the nature of an independent action.')." *Id.* at 154-155.

**{¶40}** Federal bankruptcy law gives a bankruptcy trustee the power to avoid certain transfers and transactions that took place before a bankruptcy to benefit all the creditors. These powers include (1) the trustee's strong-arm power, which allows the trustee to use state fraudulent transfer acts, (2) the power to avoid fraudulent conveyance using the federal bankruptcy fraudulent conveyance statute, and (3) the power to avoid preferences for creditors. *See* 11 U.S.C. 544, 548, 550, and 551.

**{¶41}** A review of RBT Strategies' claim against Huntington (which is almost verbatim to that pleaded in the trustee's complaint in the adversary bankruptcy

11

proceeding) reveals RBT Strategies intertwined and asserted federal bankruptcy trustee claims in conjunction with state law claims. RBT Strategies, in its complaint, alleged, "[t]he transfers to HNB were fraudulent transfers, and should be avoided and preserved for the benefit of the Plaintiffs herein, as Assignees of the Trustee, pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and Ohio Revised Code §§ 1313.56 and 1336.01, *et. seq.* . . . Alternatively, Plaintiffs, as Assignees of the Trustee, are entitled to an affirmative monetary judgment against HNB in a sum not less than $436,650.77, pursuant to 11 U.S.C. § 550(a)."

{¶42} We agree with the trial court that it lacks jurisdiction over RBT Strategies' claims insofar as they are asserted on behalf of the bankruptcy estate and under federal bankruptcy law. Provisions such as 11 U.S.C. 544 and 550 "primarily serve to grant the trustee its debtor's rights to avoid transfers under certain circumstances and to articulate the corresponding transferee's rights. Alone, neither is a basis for recovery. Each relies on outside law to decide which rights are involved. The sections merely preserve those rights in bankruptcy and allow the trustee to proceed on behalf of a collective." *In re Maxus Energy Corp.*, 597 B.R. 235, 247 (Bankr.Del. 2019).

{¶43} While RBT Strategies is correct insofar as it can assert state claims of fraudulent transfer, the federal statutes that allow a trustee to bring state law claims into federal bankruptcy court in an adversary proceeding do not conversely permit RBT Strategies to verbatim plead those claims in state court. It belies common sense that a trustee's statutory powers to bring state law claims in a federal bankruptcy case would be asserted in a complaint filed in state court.

{¶44} As the Court of Appeals of Michigan explained in *Woodridge Hills Assn. v. Williams*, 2011 WL 6378813 (Mich.App. Dec. 20, 2011), "Under 28 USC 1334(b), a fraudulent conveyance action is not subject to the exclusive jurisdiction of a bankruptcy court, and a state court suit commenced on the basis of a fraudulent conveyance is permissible where the bankruptcy court expressly refrains from acting on the claim. . . . *While a state court lacks the authority to overrule a federal bankruptcy court and infringe on its original jurisdiction*, the *state court nonetheless generally has jurisdiction over state-law fraudulent conveyance actions* regardless of whether any federal statute vests the state court with jurisdiction." (Emphasis added.) *Id.* at *4. *See also In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010) (trustee could sell state law fraudulent-conveyance actions back to creditor).

{¶45} Thus, those claims are the province of the federal bankruptcy court, and any power to assert those claims on behalf of the bankruptcy estate as the assignee should have been made in the bankruptcy case.

{¶46} RBT Strategies' sole assignment of error is without merit.

{¶47} The judgment of the Lake County Court of Common Pleas is affirmed.


ROBERT J. PATTON, P.J.,

MATT LYNCH, J.,

concur.

13